## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

WHITNEY HANCOCK and )
JAMIE WHITE, on behalf of
themselves and those similarly )
situated,
) Case No. 14-7047
Appellants, )

v. )

URBAN OUTFITTERS, INC.
and ANTHROPOLOGIE, INC. )

Appellees. )

---

## APPELLANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO CERTIFY QUESTIONS OF LAW TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

Urban Outfitters concedes that no court, much less the District of Columbia Court of Appeals, has interpreted or applied the CII Act. As a result, with no precedent on which to rely, the district court omitted step one before analyzing the statute. It failed to determine whether as a remedial statute enacted to protect consumers from an odious practice, the CII Act should be interpreted broadly, as is the case with the District of Columbia Consumer Protection Act ("DCCPA"), D.C. Code § 28-3901, *et seq.*, to ensure that its purpose is carried out. *See Ihebereme v. Capital One, N.A.,* 730 F. Supp. 2d 40, 50 (D.C. 2010) ("The purpose of the [DCCPPA] is to protect consumers from a broad spectrum of unscrupulous

practices by merchants, therefore the statute *should be read broadly* to assure that the purposes are carried out.")[1] (emphasis added).

As is often the case when analysis starts from a faulty premise, the result reached was wrong. Urban Outfitters' opposition suffers from the same flaw. Absent from its arguments (both in the lower court and here) is any discussion of the consumer-protection purpose of the statute and how that affects its interpretation. It would be odd, indeed, that a statute enacted to prohibit retailers from gaining access to consumer's private identification information allowed just that. Yet, that is what the district court ruled by taking a myopic view of the word "address." As a result, we have a consumer-protection statute designed to end a practice that does not end the practice.

This, fact, alone is a sufficient basis to let the highest local court decide this important local issue.

Urban Outfitters spends the bulk of its brief re-arguing the correctness of the lower court's opinion, which is not at issue in this Motion. While attempting to obfuscate the issue to be decided, however, Urban Outfitters concedes the need for District of Columbia Court of Appeals review:

- The "CII Act has not been interpreted by the District of Columbia Court of Appeals" (p. 7);

---

[1]     Quoting *Modern Mgmt. Co. v. Wilson,* 997 A.2d 37, 63 (D.C. 2010).

2

- "Prior to this case, no reported decision has interpreted the CII Act" (p.8);

- The statute's ambiguity is such that its "scope [is] best suited for the legislature to address, not the courts, and that is where [Appellant's] arguments belong" (p. 9)[2]

## I.    THE CORRECT INTERPRETATION OF THE CII ACT IS "GENUINELY UNCERTAIN"

### A.    The District of Columbia Court of Appeals Has Not Spoken on the Breadth of this Consumer-Protection Statute

The CII Act is a consumer-protection law enacted to prohibit retailers from gaining access to consumers' addresses under the guise of necessity in conjunction with credit-card transactions. The Consumers' Complaint alleges, *inter alia*, that Urban Outfitters gained access to their addresses under the guise of necessity in conjunction with a credit-card transaction. The district court dismissed the case *with prejudice* based on an impermissibly restrictive and unsettled interpretation of the statute's language that renders it void in today's commerce.

Urban Outfitters argues that the correct interpretation of the CII Act is not unsettled because the district court relied on "settled principles of statutory interpretation" regarding the meaning of terms contained in a statute. Opp'n at 8.

---

[2]    Urban Outfitters' suggestion that the Consumers should petition the District of Columbia Council based on the opinion of a district court sitting in diversity before the District of Columbia Court of Appeals interprets the statute seeks to put the cart before the horse. When a state's (or District's) highest judicial authority conclusively interprets a statute, it is then that concerned persons would be expected to express their grievances. Until that time, there is no finality.

But, as set forth above, both the district court and Urban Outfitters started with a faulty premise. Before the CII Act can be interpreted using "settled principles," it must be determined whether its consumer-protection purpose requires a broad interpretation to effect its remedial intent as is used by the District of Columbia Court of Appeals with regard to the DCCPA. On this point, Urban Outfitters understandably downplays (as does the district court's decision) the fact that the two state high courts that have ruled on this issue found that the consumer-protection purpose of statutes enacted to prohibit retailers from obtaining unnecessary consumer information is the linchpin in reaching the correct result. *See, e.g., Pineda v. Williams-Sonoma Stores, Inc.,* 51 Cal. 4th 524, 531 (2011) (noting that interpreting the word "address" restrictively "would render the statute's protections hollow"). [3]

Here, the district court determined the meaning of a District of Columbia consumer-protection law without citing a single District of Columbia Court of Appeals decision; much less analyzing whether the CII Act should be interpreted consistently with the DCCPA. Surely, the District of Columbia Council and

---

[3] For this reason, both the *Pineda* and the *Tyler* decisions are relevant because they support the Consumers' argument that a court using the *correct* statutory approach would have reached a different result. Indeed, Urban Outfitters has failed to provide this Court (or the district court) with any state high court decision that supports its artificially constrained view of the law.

4

District citizens have a right to assume that District of Columbia precedent will be used to interpret its laws.

In the district court, the Consumers urged the Court to acknowledge, and consider, the remedial purpose of the statute in ruling on the motion to dismiss. By failing to do so, the following absurd result has been reached: retailers may subvert the statute by asking for components of an address as long as they do not ask for the "complete" address. Thus, using the district court's impermissibly restrictive interpretation of the word "address," the CII Act does not prohibit the following questions:

- What street do you live on?
- What is the number of your house?
- What city do you live in?

The statute is not violated (using the district court's logic) because the ZIP code has not been requested and thus the retailer has not determined the complete address; the only act expressly prohibited. This approach allowed the district court to ignore the reverse engineering used here. That the result was to obtain the "complete address" prohibited by the statute is ignored.

> B. The "Discernible Path" Language Is Part of the "Genuine Uncertainty" Analysis and Further Supports Certification

Urban Outfitters suggests that the Consumers "conveniently neglected" to acknowledge and discuss the "third prong" of the Court's certification test.

5

Unfortunately, Urban Outfitters fails to cite the original quotation from where the "discernible path" language emanates:

> Where the applicable state law is clear, certification is inappropriate; it is not a procedure by which federal courts may abdicate their responsibility to decide a legal issue when the relevant sources of state law available to it provide a discernible path for the court to follow.

*Tidler v. Eli Lilly & Co.,* 851 F.2d 418, 426 (D.C. Cir. 1988). Thus, the "discernible path" language is part of the analysis engaged by the Court when determining whether the law is "genuinely uncertain." *Id.*

For this reason, Urban Outfitters' reliance on *Dial A Car v. Transp., Inc.*, 132 F.3d 743 (D.C. Cir. 1998) is inapposite. There, the Court cited the "discernible path" language to support its rejection of a party's request to certify an issue that a separate panel of the Court had already rejected. *See id.* at 746.

The question is this: Should the CII Act be restrictively interpreted (as the district court concluded) such that the statute is moot, or should it be interpreted broadly so as to ensure that it serves its consumer-protection purpose?[4] That is a quintessential decision for the District of Columbia Court of Appeals.

---

[4] The restrictive interpretation used by the District Court forced an additional absurd result. It further ruled that because the CII Act bans recording information on "credit card transaction forms" that are no longer used today, it has no application to this case. Urban Outfitters' suggestion that the District of Columbia Council has to continually monitor thousands of laws to ensure they keep up with every technological advancement would bring consumer protection, and general welfare protection, to a halt.

6

## II. CONSUMER PRIVACY IS A MATTER OF EXTREME PUBLIC IMPORTANCE

Perhaps it is understandable that Urban Outfitters, a publicly-traded corporation, does not believe that consumer privacy is an extremely important issue. The Consumers, and the purported class of thousands, whose private information is being secretly obtained by Urban Outfitters, have a different view. Indeed, consumer-data breaches and identity theft are so obviously extremely important public-safety issues that the Consumers need not devote much ink on this point.

The question of extreme importance is not, as Urban Outfitters suggests, whether a court should apply traditional "maxims" to statutory language. The question of extreme importance is whether the CII Act, which was enacted to ban retailers from obtaining unnecessary personal information in conjunction with credit-card transactions, serves that purpose.[5]

---

[5] Urban Outfitters invites this Court to summarily affirm the district court's decision. As the Consumers stated in their opening brief, they have not set forth many of their substantive arguments in this Motion. As one example, Urban Outfitters suggests that the Consumers' DCCPA claim rises and falls on the illegality of the ZIP Code request. Not true. The ZIP Code request could be a legal one and still violate the DCCPA by misrepresenting that it is necessary to complete the transaction. Similarly, the overstated other "flaws" in the Consumers' Complaint (if such existed) could have been addressed had the lower court not dismissed the case *with prejudice*.

7

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Consumers respectfully request that this Court certify, pursuant to D.C. Code § 11-723, the following questions to the District of Columbia Court of Appeals:

(1)  Does D.C. Code § 47-3153, entitled "Use of consumer identification information in connection with credit card payments," prohibit District of Columbia retailers from requesting and/or recording customers' ZIP Codes when consumers choose to pay by credit card?

(2)  Even if D.C. Code § 47-3153 does not prohibit the conduct in question (1), can such a practice still violate the District of Columbia Consumer Protection Act's (D.C. Code § 28-3900 et seq.) prohibition on misrepresentation of material facts and/or failure to state material facts that have a tendency to mislead?

Respectfully submitted,

PERRY CHARNOFF PLLC

__/s/ Scott M. Perry_____
Scott M. Perry (Bar No. 55334)
Mikhael D. Charnoff (Bar No. 55318)
2300 Wilson Boulevard, Suite 240
Arlington, VA 22201
P: 703-291-6650
F: 703-563-6692
scott@perrycharnoff.com
mike@perrycharnoff.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of June, 2014, I caused a copy of this Reply in Support of Motion to Certify Questions of Law to the District of Columbia Court of Appeals to be served via the Court's electronic filing system on:

James M. Burns, Esq.
Dickinson Wright PLLC
1875 I Street, N.W., Suite 1200
Washington, DC 20006
*Counsel for Appellees*

          /s/ Scott M. Perry
         Scott M. Perry