No. 14-7047

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

IN THE

United States Court of Appeals
for the District of Columbia Circuit

WHITNEY HANCOCK, On behalf of herself and all others
similarly situated; JAMIE WHITE, On behalf of herself
and all others similarly situated

*Plaintiffs-Appellants*,

v.

URBAN OUTFITTERS, INC.; ANTHROPOLOGIE, INC.,

*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Columbia
No. 1:13-cv-00939-BAH (Hon. Beryl A. Howell)

BRIEF FOR DEFENDANTS-APPELLEES

JAMES M. BURNS (BAR NO. 412319)
*Counsel of Record*
DICKINSON WRIGHT, PLLC
1875 Eye St. N.W. – Suite 1200
Washington, D.C. 20006
202-457-0160
JMBurns@dickinson-wright.com

October 16, 2014

*Counsel for Urban Outfitters, Inc. and
Anthropologie, Inc.*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

**Parties and Amici**: All parties appearing before this Court are listed in the Brief for Appellants.

Pursuant to Rule 26.1, Appellee Anthropologie, Inc. hereby gives notice that it is a subsidiary of Appellee Urban Outfitters, Inc., and Appellee Urban Outfitters, Inc. hereby gives notice that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

**Rulings Under Review**: This case was decided by the Honorable Beryl A. Howell, United States District Judge.  Judge Howell dismissed the case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 14, 2014. Judge Howell's Memorandum Opinion is contained at JA 161-173.  Judge Howell's final Order is contained at JA 174.

**Related Cases**: This case has not previously been before this Court and there are no related cases.

i

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES...............i

TABLE OF CONTENTS ........................................................................................ii

TABLE OF AUTHORITIES..................................................................................iv

GLOSSARY OF ABBREVIATIONS .....................................................................vi

ISSUES PRESENTED ............................................................................................ 2

STATUTES AND REGULATIONS ........................................................................ 3

STATEMENT OF THE CASE ................................................................................. 3

SUMMARY OF ARGUMENT................................................................................ 8

ARGUMENT ....................................................................................................... 15

I.  JUDGE HOWELL'S DISMISSAL OF THE COMPLAINT WAS
    UNQUESTIONABLY CORRECT ................................................................ 15

    A. Dismissal of Hancock's CII Act claim was appropriate because Hancock
       failed to plead four of the five essential elements of the claim .................... 15

       1. Hancock has not, and cannot, plead that Urban Outfitters requested her
          "address"........................................................................................... 16

          a. ZIP code is not an essential part of an address. ...................................... 17

          b.The CII Act's prohibition on requesting an "address" does not permit
            expansion to prohibit "any part of an address" ......................................... 18

       2. Hancock did not plead that Urban Outfitters requested or recorded her
          address "on a credit card transaction form" .............................................. 19

       3. Hancock did not adequately plead that the request for her ZIP code was a
          "condition" of using her credit cards to purchase goods from Urban
          Outfitters......................................................................................... 21

       4. Hancock's contention that because the CII Act is a "remedial" statute it
          should be interpreted broadly and liberally cannot justify changing the
          plain text of the Act ...................................................................... 23

       5. Hancock's dissatisfaction with the scope of the CII Act as compared to the
          more broadly written statutes of other states is for the Legislature, not this
          Court........................................................................................ 25

## TABLE OF CONTENTS—Continued

Page

B. The District Court also properly dismissed Hancock's DCCPPA claim
because Hancock did not plead any "misleading" conduct by Urban
Outfitters....................................................................................................... 26

  1. Urban Outfitters made no affirmative misrepresentation............................ 27

  2. Failing to state that a request for a ZIP code is optional is also not
    actionable.................................................................................................. 27

  3. Hancock's effort to modify the subject matter of Urban Outfitters's alleged
    misrepresentation is meritless.................................................................... 29

II. THE DISTRICT COURT PROPERLY DISMISSED HANCOCK'S
COMPLAINT WITH PREJUDICE................................................................... 30

  A. Numerous incurable deficiencies existed in Hancock's Complaint.............. 30

  B. Hancock never properly sought leave to amend in the lower court. .............. 31

III. JUDGE HOWELL CORRECTLY HANDLED THE SUBJECT MATTER
JURISDICTION ISSUE. ................................................................................... 32

IV. HANCOCK'S REQUEST FOR CERTIFICATION SHOULD BE DENIED. 33

  A. D.C. statutory interpretation case law is not genuinely uncertain................ 34

  B. The case does not present a matter of extreme public importance................ 35

  C. A discernible path exists for the D.C. Circuit to follow. ............................... 35

CONCLUSION ........................................................................................................ 36

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

## Cases

*Adams v. Rice,* 531 F.3d 936 (D.C. Cir. 2008)................................................. 12, 29

Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F. Supp. 2d. 165
(D.D.C. 2003)................................................................................................... 22

*Bell v. Hood,* 327 U.S. 678 (1946) ..................................................................... 14, 32

*Cal. Indep. Sys. Operator Corp. v. FERC,* 372 F.3d 395 (D.C. Cir. 2004).......... 16

Carr v. Tillery, 591 F.3d 909 (7th Cir. 2010)...................................................... 14, 33

Carter v. Bank of America, N.A., 888 F. Supp. 2d 127 (D.D.C. 2012).................. 27

Community-Service Broadcasting of Mid-America, Inc. v. FCC, 593 F.2d 1102
(D.C. Cir. 1978)............................................................................................ 25, 35

Confederate Memorial Ass'n. Inc. v. Hines, 995 F.2d 295 (D.C. Cir. 1993) ........ 13

*Connecticut Nat. Bank v. Germain,* 503 U.S. 249 (1992)........................... 9, 16, 19

Crawford v. District of Columbia, 891 A.2d 216 (D.C. 2006) .............................. 34

*Dial A Car, Inc. v. Transp., Inc.,* 132 F.3d 743 (D.C. Cir. 1998)....... 15, 33, 34, 36

District of Columbia v. Air Florida, Inc., 750 F.2d 1077 (D.C. Cir. 1984)........... 30

Donovan v. U.S. Postal Svc., 1981 U.S. Dist. LEXIS 17145 (D. D.C. Aug. 5,
1981)................................................................................................................ 18

*Firestone v. Firestone,* 76 F.3d 1205 (D.C. Cir. 1996)................................... 12, 30

Gaubert v. Federal Home Loan Bank Board, 863 F.2d 59 (D.C. Cir. 1988) ........ 12

*Jackson v. Asa Holdings, LLC,* 751 F. Supp. 2d 91 (D.D.C. 2010)....................... 28

James Parreco & Son v. District of Columbia Rental Housing Com., 567 A.2d 43
(D.C. 1989)................................................................................................... 25, 35

*Kowal v. MCI Communications Corp.,* 16 F.3d 1271 (D.C. Cir. 1994) ......... 13, 32

Pineda v. Williams-Sonoma Stores, Inc., 246 P.3d 612 (Cal. 2011)..................... 26

Stevens v. Arco Mgmt. of Wash. D.C., Inc., 751 A.2d 995 (D.C. 2000)................ 34

*Symons v. Chrysler Corp. Loan Guar.Bd.,* 670 F.2d 238 (D.C. Cir. 1981)...... 9, 23

Tidler v. Eli Lilly & Co., 851 F.2d 418 (D.C. Cir. 1988)........................................ 33

Tyler v. Michaels Stores, Inc., 984 N.E.2d 737 (Mass. 2013) .............................. 26

Warth v. Seldin, 422 U.S. 490 (1975) ................................................................ 14, 32

*Whiting v. AARP,* 637 F.3d 355 (D.C. Cir. 2011)................................................... 31

## Statutes

D.C. Code § 47-3153............................................................................................. 19

D.C. Code § 47-3153(a) ...................................................................................... 6, 24

D.C. Code §§ 28-3901......................................................................................... 2, 4

D.C. Code §§ 47-3151........................................................................................ 2, 3, 4

## Rules

Fed. R. Civ. P. 12(b)(6)................................................................................. 3, 22, 31

Fed. R. Civ. P. 15 ................................................................................................... 12

## TABLE OF AUTHORITIES—Continued

Page(s)

Fed. R. Civ. P. 15(a) ............................................................................................. 13
Fed. R. Civ. P. 9(b) .............................................................................................. 31

# GLOSSARY OF ABBREVIATIONS

1. Appellees Urban Outfitters, Inc. and Anthropologie, Inc. ("Urban Outfitters")

2. Appellants Whitney Hancock and Jamie White ("Hancock")

3. District of Columbia's Use of Consumer Identification Information Act, D.C. Code §§ 47-3151 et seq. (the "CII Act")

4. District of Columbia's Consumer Protection Procedures Act, D.C. Code §§ 28-3901 et seq. (the "DCCPPA")

IN THE

# United States Court of Appeals for the District of Columbia Circuit

WHITNEY HANCOCK, On behalf of herself and all others
similarly situated; JAMIE WHITE, On behalf of herself
and all others similarly situated

*Plaintiffs-Appellants,*

v.

URBAN OUTFITTERS, INC.; ANTHROPOLOGIE, INC.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Columbia
No. 1:13-cv-00939-BAH (Hon. Beryl A. Howell)

**BRIEF FOR DEFENDANTS-APPELLEES
URBAN OUTFITTERS, INC. AND ANTHROPOLOGIE, INC.**

## ISSUES PRESENTED

1)    Did the District Court properly dismiss plaintiffs/appellants' claim under the District of Columbia's Use of Consumer Identification Information Act, D.C. Code §§ 47-3151 *et seq.*, a statute that by its clear and unambiguous terms only regulates retailer requests for a consumer's address or telephone number, where plaintiffs clearly pled that only their ZIP code, and not their address, had been requested?

2)    Did the District Court properly dismiss plaintiffs/appellants' claim under the District of Columbia's Use of Consumer Identification Information Act, D.C. Code §§ 47-3151 *et seq.*, where, in addition to failing to allege that a request for an "address" had been made, plaintiffs/appellants also failed to plead several other essential elements of such a claim?

3)    Did the District Court properly dismiss plaintiffs/appellants' claim under the District of Columbia's Consumer Protection Procedures Act, D.C. Code §§ 28-3901 *et seq.*, where the District Court found that plaintiffs/appellants had failed to allege a materially misleading misstatement or omission, given that the allegedly actionable statement (a request for a ZIP code) had already been found not to be unlawful?

4)    Was the District Court's decision to dismiss the Complaint with prejudice an abuse of its discretion, where the District Court recognized that

2

amendment would be futile and plaintiffs/appellants had never properly requested leave to amend the Complaint?

5)    Is certification of plaintiffs/appellants' claim under the District of Columbia's Use of Consumer Identification Information Act, D.C. Code §§ 47-3151 *et seq.* to the D.C. Court of Appeals required where the District Court's ruling on the claim was a simple exercise of statutory interpretation, affording it, and this Court, a "clearly discernable path" to the proper resolution of the claim?

6)    Did the District Court have subject matter jurisdiction over this action, where plaintiffs/appellants made a non-frivolous *attempt* to plead a violation of a statutory right, thus justifying the District Court's decision to reach the merits of the claims, and dismiss them under Rule 12(b)(6)? [This issue is presented at the request of the Motions Panel, as set forth in its July 30 Order; neither appellants nor appellees contend on appeal that subject matter jurisdiction/Article III standing does *not* exist here.]

## STATUTES AND REGULATIONS

All relevant statutory provisions are contained in the Addendum to the Brief for plaintiffs/appellants and incorporated herein by reference.

## STATEMENT OF THE CASE

*The Parties Involved and Claims at Issue.* Appellees Urban Outfitters, Inc. and its subsidiary, Anthropologie, Inc. (hereafter collectively "Urban Outfitters"),

3

are national retailers that do business in the District of Columbia. Appellants Whitney Hancock and Jamie White (collectively "Hancock") were customers at Urban Outfitters stores in the District.

On June 21, 2013, Hancock commenced this action in the District Court, contending that Urban Outfitters violates the laws of the District of Columbia by "request[ing] and collect[ing] a customer's ZIP code when a customer chooses to use a credit card to make a purchase" at an Urban Outfitters store. (Comp. ¶¶ 1-2; JA 8). Specifically, Hancock contended that such conduct violates the District of Columbia's Use of Consumer Identification Information Act, D.C. Code §§ 47-3151 *et seq*. (the "CII Act") (Count I of the Complaint) and the District of Columbia's Consumer Protection Procedures Act, D.C. Code §§ 28-3901 *et seq*. (the "DCCPPA") (Count II of the Complaint). (Comp. ¶¶ 45-67; JA 6 - 20).

The facts alleged in the Complaint are simple, and the same in all material respects as to each plaintiff/appellant: Hancock alleged that she had made a purchase at an Urban Outfitters store with a credit card, and that an Urban Outfitters sales clerk, after swiping her credit card to process payment for the goods selected, subsequently asked her if she would provide the clerk with her ZIP code. (Comp. ¶¶ 23-41; JA 12-14). Hancock alleged that she complied with this request – without any further discussion or interaction between the sales clerk and her regarding why the request had been made – and that the sales clerk's conduct,

4

described above, is "illegal" in the District of Columbia under the CII Act and the DCCPPA. (Comp. ¶¶ 33-41; JA 13-14).

Notably, nowhere in the Complaint does Hancock allege that the Urban Outfitters sales clerk requested that she provide her *address* or *telephone number,* nor does Hancock allege that the sales clerk stated or suggested, in any way, that providing her ZIP code was a *condition* of completing the credit card transaction. (Comp. ¶¶ 23-41; JA 12-14). In addition, nowhere in the Complaint does Hancock allege that she believed the sales clerk's request for her ZIP code was a *requirement* of completing the transaction. Nor does Hancock allege that she would have chosen not to provide this information to the sales clerk if expressly informed that doing so was voluntary or that she would have declined to make the purchase if providing a ZIP code was required. (Comp. ¶¶ 23-41; JA 12-14) Finally, Hancock does not allege what, if anything, Urban Outfitters did with her ZIP code, other than alleging that Urban Outfitters "enter[ed] it . . . into Urban Outfitters's point of sale register, *not* into the credit card swipe machine." (Comp. ¶¶ 33, 39; JA 13) (emphasis in original).

*The District Court's Ruling.* Urban Outfitters filed a motion to dismiss the Complaint, demonstrating that the allegations failed to assert any claim of wrongdoing on its part. Specifically, Urban Outfitters explained that its alleged conduct is *not* prohibited by the CII Act, which formed the basis for Hancock's

Count I. As Urban Outfitters noted, the CII Act restricts the right of a retailer to
request or record a customer's "*address or phone number*" (not a ZIP code), "on a
credit card transaction form" (not in a point of sale register), and only in
circumstances where the request or recording is a "precondition of accepting a
credit card as payment." (Urban Outfitters Dist. Court Brief; JA 27-30). Nowhere
in Hancock's Complaint had these essential allegations been pled. In addition,
Urban Outfitters demonstrated that its conduct – perfectly consistent with the CII
Act – provided no basis for a claim under the DCCPPA (Hancock's Count II),
because it was in no way misleading or fraudulent. (Urban Outfitters Dist. Court
Brief; JA 30-34).

On March 14, 2014, Judge Howell, in a well-reasoned decision, granted
Urban Outfitters's motion to dismiss the Complaint. Judge Howell explained, to
establish a violation of the CII Act one must demonstrate: "(1) that [a plaintiff's]
address . . . (2) [was] requested or recorded (3) on "the credit card transaction
form" (4) "as a condition of accepting a credit card as payment" (5) "for a sale of
goods or services." (Mem. Op. at 3, 5; JA 163, 165; citing D.C. Code § 47-
3153(a)). However, as Judge Howell recognized, "the Complaint fail[ed] to meet
four [of the five] requisite elements to state a *prima facie* case for a violation of the
CII Act." (Mem. Op. at 5; JA 165). In addition, recognizing that some, if not all,
of these defects were irreparable (for example, no amount of re-pleading could

6

transform a request for a ZIP code into a request for an address), Judge Howell held that amendment of the Complaint would be "futile" (Mem. Op. at 12; JA 172), and properly dismissed the claim with prejudice. (Mem. Op. at 5-10; JA 165-170).

As to Hancock's other claim (Count II), under the DCCPPA, Judge Howell carefully considered this claim as well, and determined that it too was fatally flawed. Judge Howell observed that Count II was "predicated on [Hancock's] erroneous interpretation of the CII Act" – specifically, Hancock's mistaken view that a request for a ZIP code violates the CII Act - and thus correctly concluded that Hancock had "failed to allege the affirmative misrepresentation or omission of any material fact . . ." required to state a claim under the DCCPPA. (Mem. Op. at 11; JA 171).

*Proceedings Before this Court.* Despite the indisputable soundness of Judge Howell's reasoning, Hancock appealed the District Court's decision to this Court. However, not content to have this Court decide the issues in this case, Hancock subsequently filed a motion seeking to have the case certified to the District of Columbia Court of Appeals. In support of that request, Hancock contended – erroneously in Urban Outfitters's view – that the issues in this case are so unique, and of such importance, that this Court should seek guidance from the D.C. Court of Appeals on the matter. Urban Outfitters opposed the motion,

7

explaining that the District Court's analysis was a simple exercise in statutory interpretation – reading the plain language of the CII Act and applying it to the facts alleged in the Complaint – which was certainly *not* an issue requiring Certification.

On July 30, 2014, a Motions Panel of this Court issued an Order deferring resolution of Hancock's Certification request for decision by the Merits Panel. In addition, the Motions Panel also, *sua sponte*, directed the parties address the issue of Article III standing in their briefs. (*See*, D.C. Circuit Order, July 30, 2014).

Hancock has now filed her merits brief, repeating many of the arguments that Judge Howell properly rejected below, followed by a recitation of the arguments she previously advanced in support of Certification and a statement as to why the District Court, and now this Court, has standing/subject matter jurisdiction to hear this matter. Urban Outfitters now responds, demonstrating, once again, that its conduct was lawful in all respects, that Judge Howell's decision to dismiss the Complaint with prejudice was correct in the circumstances, and that *this* Court is the correct forum for this matter to be decided and finally laid to rest.

## SUMMARY OF ARGUMENT

Judge Howell expressly noted in her opinion that "the facts in this matter are simple." (Mem. Op. at 1; JA 161). Urban Outfitters submits that the application of

8

these facts to the controlling law is equally simple, and requires affirmance of the District Court's decision in all respects.

**The CII Act Claim.** As Judge Howell recognized, the Complaint failed adequately to allege *any* of the first four required elements of a claim under the CII Act, any one of which was independently sufficient to require dismissal of the claim. (Mem. Op. at 5; JA 165). Accordingly, on appeal, Hancock bears the burden of demonstrating that Judge Howell was wrong not once, but multiple times, with respect to this claim. Hancock cannot meet this challenge.

First and foremost, Hancock cannot change the plain language of the CII Act. The statute clearly states that it prohibits a request for an *address* or a *telephone number,* not a ZIP code. Because a court must "presume that a legislature says in a statute what it means and means in a statute what it says . . . ." *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-54 (1992), Hancock cannot transform a ZIP code into actionable conduct under the CII Act. And, this remains true notwithstanding Hancock's repeated statement that the CII Act has a "remedial purpose." (Hancock Br., *passim.*) As this Court has expressly observed: "The fact that legislation has a remedial purpose . . . does not give the judiciary license, in interpreting a provision, to disregard entirely the plain meaning of the words used by Congress." *Symons v. Chrysler Corp. Loan Guarantee Bd.,* 670 F.2d 238, 241 (D.C. Cir. 1981). However, this is precisely what Hancock seeks,

9

and *needs* to change the result below. Accordingly, the claim fails as a matter of law, and the District Court ruling should be affirmed.

In addition, Hancock's CII Act claim fails for the separately sufficient reason that she also did not adequately plead that her ZIP code (much less the required *address*), was requested or recorded "on a credit card transaction form," the third element of a CII Act violation. Indeed, as Judge Howell correctly noted, even construing her allegations liberally, Hancock's allegations required a contrary finding – that by recording the information in the point of sale register, and not the credit card swipe machine, Urban Outfitters "took steps specifically designed to adhere to the law by affirmatively separating the ZIP code information from the credit card information." (Mem. Op. at 8-9; JA 168-169).

Finally, affirmance of Judge Howell's ruling on the CII Act claim is required because – as Judge Howell also correctly observed – nowhere in the Complaint did Hancock allege that the request for her ZIP code was a "condition" of allowing her to use her credit card to purchase goods. As Judge Howell noted, Hancock expressly pled that she was asked for her ZIP code *after* the Urban Outfitters clerk had swiped her credit card. (Mem. Op. at 8; JA 168). Because the plain language of the CII Act requires that the request be made as a *condition* of the use of the card, Hancock's claim fails on this basis as well.

10

**The DCCPPA Claim.** Hancock's arguments with respect to her DCCPPA claim are equally infirm. In her Complaint, and before the District Court, Hancock argued that Urban Outfitters allegedly misled her in two ways: (1) by requesting ZIP code, which Hancock maintained was "illegal;" and (2) by failing to disclose that the request was optional (Hancock Dist. Court Br. at 15-18; JA 52-55). As Judge Howell correctly determined, each of these arguments is incorrect.

First, as Judge Howell held, Hancock's DCCPPA claim failed because, ultimately, it is "predicated on [Hancock's] erroneous interpretation of the CII Act claim, namely that it is illegal to request a ZIP code from a consumer." (Mem. Op. at 10; JA 170.) Second, with respect to the issue of whether such information was required or optional, as Judge Howell also recognized: "Although the DCCPPA 'shall be construed and applied liberally to promote its purpose,' (citation omitted), even under the most liberal interpretation of plaintiffs' complaint, the plaintiffs have not pleaded that the transactions at issue would not have been completed had the plaintiffs not provided their ZIP codes." (Mem. Op. at 11; JA 171.) As such, "the plaintiffs [had] not made any factual allegations from which it [could] be inferred that the provision of a ZIP code was required for the credit card transactions at issue." *Id.* Hancock offers nothing on appeal that challenges the correctness of this assessment in any way.

11

Perhaps recognizing that the District Court's handling of the issue was correct, on appeal, Hancock now adds a new contention -- that Urban Outfitters's conduct violates the DCCPPA because Urban Outfitters failed to apprise her that it would later use her ZIP code to acquire her full address. However, this contention is not pled in the Complaint (*see* Comp. ¶¶ 55-67; JA 18-19), nor was it argued by Hancock below as a basis for finding a DCCPPA violation. Because it is well-settled that an appellant may not bring to this Court new legal theories not asserted in the District Court, *Adams v. Rice,* 531 F.3d 936, 945 (D.C. Cir. 2008) (a party forfeits for appeal those arguments not raised in the District Court), this new argument should be ignored.

**Dismissal With Prejudice Was Appropriate.** Despite the fact that the District Court's dismissal of Hancock's Complaint was based upon numerous, independently sufficient and irreparable grounds, Hancock additionally takes issue with Judge Howell's decision to dismiss her Complaint with prejudice. Hancock is again mistaken; indeed, her argument clearly withers in the face of the abuse of discretion standard by which her request is properly measured. *Gaubert v. Federal Home Loan Bank Board,* 863 F.2d 59, 69 (D.C. Cir. 1988).

While Rule 15 provides that amendment of a Complaint should be "freely given when justice so requires," it is well-settled that where amendment would be "futile" no opportunity for amendment need be provided. *See Firestone v.*

12

*Firestone*, 76 F.3d 1205, 1208, 316 U.S. App. D.C. 152 (D.C. Cir. 1996) (explaining that a district court does not abuse its discretion by denying leave to amend a complaint where amendment would be futile). Here, the shortcomings in Hancock's Complaint cannot be cured – applying the plain language of the statutes to Urban Outfitters's alleged conduct, the conduct is simply *not* unlawful. As Judge Howell observed, no manner of amendment can change that fact. *See* Mem. Op. at 12; JA 172. Moreover, Hancock never properly requested leave to amend in the proceedings below, *Confederate Memorial Ass'n. Inc. v. Hines,* 995 F.2d 295, 299 (D.C. Cir. 1993) (a "bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought – does not constitute a motion within the contemplation of Rule 15(a)"), which constitutes an additional appropriate basis for affirmance of Judge Howell's dismissal with prejudice. *See Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1280 (D.C. Cir. 1994) ("[I]t could hardly have been an abuse of discretion for the District Court not to have afforded [the plaintiffs] such leave *sua sponte*."). And, ultimately, even before this Court, Hancock never suggests what it *would* amend, if permitted, to transform her clearly deficient allegations into a sustainable cause of action.

**Article III Standing.** The Standing issue is presented in the parties' briefs in response to a request from the Motions Panel. In her brief to this Court, Hancock

13

maintains that the District Court, and now this Court, has Article III Standing based upon her contention that Urban Outfitters violated her statutory rights, citing *Warth v. Seldin,* 422 U.S. 490, 500 (1975). Urban Outfitters does not dispute that this Court has subject matter jurisdiction to hear and decide Hancock's appeal. Urban Outfitters believes that the District Court handled this issue correctly. Judge Howell accepted that jurisdiction would exist if the allegations stated a cause of action, as permitted under *Bell v. Hood,* 327 U.S. 678, 682 (1946), and then proceeded to consider, and rule upon, the claims on the merits. *Id.* at 682-83 ("If [a] court . . . exercises its jurisdiction to determine that the allegations in the Complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction."); *See also Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010) ("The presumption . . . is that the dismissal of even a very weak case should be on the merits, rather than because it was too weak even to engage federal jurisdiction.").

**Certification is Not Warranted.** Finally, Hancock's request to have this Court send the matter to the Court of Appeals for the District of Columbia is unjustified. The issue on which Hancock seeks certification – the breadth and scope of the CII Act – is not implicated by Judge Howell's ruling. Judge Howell did nothing more than apply the plain language of the CII Act to Hancock's allegations, a pedestrian exercise that did not require her to reach any unique local

14

issue or identify a matter of extreme public importance. Instead, relying on well-accepted principles of statutory construction, she proceeded down a well-accepted, "clear path" to an appropriate judgment. Accordingly, Hancock's request unquestionably fails this Court's test for certification, as expressed in *Dial A Car, Inc. v. Transp., Inc.*, 132 F.3d 743, 746 (D.C. Cir. 1998) ("If . . . there is a 'discernible path for the court to follow,' then we do not stop short of deciding the question."). The time is right for this matter to be fully and finally put to rest, and the Court to do so is *this* Court. Urban Outfitters respectfully requests that the ruling of the District Court be affirmed in all respects, and the matter closed.

## ARGUMENT

## I. JUDGE HOWELL'S DISMISSAL OF THE COMPLAINT WAS UNQUESTIONABLY CORRECT

### A. Dismissal of Hancock's CII Act claim was appropriate because Hancock failed to plead four of the five essential elements of the claim

In her Opinion below, Judge Howell expressly noted that Hancock had failed adequately to plead *four* of the five required elements of a claim under the CII Act. (Mem. Op. at 5; JA 165). Accordingly, on appeal, Hancock must show that Judge Howell's analysis of the CII Act was incorrect in at least *four* separate respects to prevail. However, as demonstrated below, it is Hancock who is incorrect on each of these issues, not Judge Howell, and thus the District Court's dismissal of the CII Act claim was unquestionably proper.

15

1.    **Hancock has not, and cannot, plead that Urban Outfitters requested her "address"**

The first element of a CII Act claim, as noted by the District Court, is a request for an "address or telephone number." (Mem. Op. at 5; JA 165). Before the District Court, and again before this Court, Hancock argues that a ZIP code is an address and, alternatively, that a ZIP code is an essential part of an address that brings the request for a ZIP code within the scope of the CII Act. (Hancock Br. 29-34). Judge Howell correctly rejected both of Hancock's contentions, as should this Court.

First, applying traditional rules of statutory construction, Judge Howell noted that "[t]he word 'address' is not defined in the CII Act" and, for that reason, the word "must therefore be afforded its common meaning." (Mem. Op. at 5; JA 165); *see Connecticut Nat.,* 503 U.S. at 253-54 (A court must "presume that a legislature says in a statute what it means and means in a statute what it says . . . .") *Cal. Indep. Sys. Operator Corp. v. FERC,* 372 F.3d 395, 400 (D.C. Cir. 2004). ("[W]e begin with a 'plain language' analysis of the statutory text. That is, we assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.").

Second, Judge Howell applied Hancock's proffered "common" definition of address – "the location at which a person or organization may be found" – to the issue, and unequivocally demonstrated the infirmity of Hancock's position. (Mem.

16

Op. at 6; JA 166). To do so, Judge Howell required nothing more than a single, simple, example:

> One may locate the United States District Court for the District of Columbia if one knows its building number. . . , street . . . , and city . . . , even if they have no knowledge of the Court's ZIP code. Yet, if one knew only the Court's ZIP code . . . one would be unable to pinpoint the Court's location, since the ZIP code refers to an area of 2.184 square miles.

(Mem. Op. at 6; JA 166). Accordingly, as Judge Howell properly concluded, a ZIP code does *not* identify the "location where one can be found," and thus is something different than an address. Recognizing that there was no proper basis or justification for modifying the clear language of the CII Act to prohibit requesting *anything* other than an address or telephone number, Judge Howell correctly held that the claim failed. (Mem. Op. at 6-7; JA 166-167).

### *a. A ZIP code is not an essential part of an address*

On appeal, while not completely abandoning her clearly infirm "a ZIP code is an address" argument, Hancock focuses greater attention on the equally flawed contention that a ZIP code is an "integral component of an address," capable of sweeping her allegations into the scope of CII Act (Hancock. Br. at 29-30, 32). This argument was also carefully considered, and properly rejected, by the District Court.

17

In support of this contention, Hancock cites a passage from *Donovan v. U.S. Postal Svc.*, 1981 U.S. Dist. LEXIS 17145, *2 (D. D.C. Aug. 5, 1981), and argues that *Donovan* proves that a "ZIP code is an essential part of an address." (*Id*. at 30-31). Donovan, however, does nothing of the sort. The passage that Hancock cites, viewed closely, states that "[t]he *vast majority* of outgoing mail . . . is sorted by use of ZIP codes only . . . , [t]he *remainder* (noncoded or miscoded mail) is sorted by either state or by use of a distribution scheme." (*Id*. at 30) (emphasis added). This language, of course, compels the conclusion that at least in *some* cases, a ZIP code is *not* used at all. Accordingly, Hancock's own "support" actually refutes her contention that a ZIP code is "essential" to the delivery of mail to a specific address. As the District Court recognized, names, streets and towns are the "essential" aspects of an address, and nowhere does Hancock allege (nor could she) that any of this information was requested of her by Urban Outfitters. For this reason as well, Hancock's CII Act claim necessarily fails.

### b. The CII Act's prohibition on requesting an "address" does not permit expansion to prohibit "any part of an address"

Hancock next argues that the CII Act's prohibition on requesting an *address* should be read to prohibit a ZIP code, because a ZIP code is "part of an address," even if, as demonstrated above, it is certainly not an *essential* part of an address. In support of this argument, Hancock asserts that "[N]othing in D.C. Code § 47-

18

3153 limits the prohibition as applying only to a 'full address.'" (Hancock. Br. at 32). This argument is equally meritless.

As Urban Outfitters demonstrated below, and as the District Court found, the plain words of the CII Act "do not prohibit the request for an 'integral component of an address,' they prohibit the request of 'the address . . . of a credit card holder.'" (Mem. Op. at 6, fn.5; JA 166). In addition, Hancock's suggestion that Judge Howell "read[] something into the statute that is not there" -- namely the word "full" in front of the word address (Hancock Br. at 32) – is also off the mark, as it tramples upon well-settled principles of statutory construction. *See Connecticut Nat. Bank*, 503 U.S. at 254 ("When the words of a statute are unambiguous, then, the first canon is also the last: judicial inquiry is complete.") (internal quotation omitted). Having failed to allege that Urban Outfitters requested her *address*, Hancock's CII Act claim is irreparably insufficient as a matter of law.

**2.    Hancock did not plead that Urban Outfitters requested or recorded her address "on a credit card transaction form"**

Even if Hancock could persuade this Court that a ZIP code is an address (a hopeless pursuit, in Urban Outfitters's view), Hancock still cannot succeed in her appeal unless she can also demonstrate that the District Court erred a second time, in finding that the Complaint did not adequately plead that her "address" was "requested or recorded" on "a credit card transaction form." As Judge Howell

19

noted, no such allegation appears anywhere in the Complaint. (Mem. Op. at 8-9; JA 168-69). And, neither before the District Court, nor this Court, does Hancock contend otherwise.

Unable to identify any factual allegation in the Complaint that comes close to satisfying this element of a CII Act claim, Hancock argues to this Court that the words "request or record" in the statute are written "in the disjunctive." (Hancock Br. at 34.) This correct observation, however, is of no consequence, because, read disjunctively, the statute plainly provides that while either "requesting" or "recording" can be a violation of the Act, *in either case* the requesting or recording *must* be done "on the credit card transaction form." In short, Hancock cannot divorce the "requesting" portion of the statute's prohibition from the remainder of the sentence, and certainly offers no justification for this Court to do so.

Thus, given that Hancock is required to plead that some "request or recording" occurred "on a credit card form," the allegations of Hancock's Complaint come up short. As Judge Howell observed, Hancock expressly pled that "her ZIP code[] was recorded into the defendants' 'point-of-sale register, not into the credit-card-swipe machine.'" (Mem. Op. at 8; JA 168). For this reason, the District Court held that "[b]y pleading that [Urban Outfitters] used a system *entirely separate from the credit card transaction machine* to record the [appellants'] ZIP codes, [Hancock] has utterly *failed* to plead that [Urban

20

Outfitters] recorded anything '*on the credit card transaction form.*'" (Mem. Op. at 9; JA 169) (emphasis added). In fact, as Judge Howell correctly observed, the allegations suggest, if anything, that "[Urban Outfitters] *took steps* specifically designed *to adhere to the law* by affirmatively *separating* the ZIP code information from the credit card information." (*Id.*) (emphasis added). Accordingly, Hancock's contention that Urban Outfitters's conduct should be recast in some fashion to *become* a violation of the CII Act, even though the allegations of the Complaint do not support such a finding, rings particularly hollow.

> 3.    **Hancock did not adequately plead that the request for her ZIP code was a "condition" of using her credit card to purchase goods from Urban Outfitters**

As Urban Outfitters also demonstrated below, and as the District Court held, the Complaint also failed as a matter of law because Hancock had not adequately pled that the request for a ZIP code (assuming it could properly be read as an "address") was made a *condition* of acceptance of the credit card. On appeal, Hancock does not deny that no such allegation is contained in the Complaint, but chastises Judge Howell for not giving them the benefit of what Hancock characterizes as "reasonable inferences" on this element. (Hancock Br. at 35-36). Specifically, Hancock argues that, because "[t]here is no allegation that the credit card was returned, or that the transaction was completed, before the ZIP code

21

request was made," those "temporal" considerations were sufficient for the Court to infer that the ZIP code request was a "pressure tactic" and "a condition of payment." (Hancock Br. at 36).

Judge Howell rejected this argument, and rightly so. As she explained, the Complaint does not "even hint that [Hancock] was *not allowed* to use her credit cards *unless* she provided her ZIP codes to [Urban Outfitters'] cashiers . . . ." (Mem. Op. at 8; JA 168) (emphasis added), and Hancock failed "to indicate how [the] *temporal proximity* [of the request to the return of Hancock' credit cards] *equate[d]* with *an affirmative requirement* that [she] provide her ZIP codes *in order to complete the transaction.*" (*Id.*) (emphasis added). Moreover, as Judge Howell also correctly noted, Hancock's "temporal proximity" argument constituted an attempt to add "additional facts in her briefing" that were "not properly before the [c]ourt on a Rule 12(b)(6) motion." (*Id.*) (citing *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d. 165, 170 (D.D.C. 2003) ("It is axiomatic that a Complaint may not be amended by the briefs in opposition to a motion to dismiss.")).

Finally, Hancock's "temporal proximity" argument is simply faulty on its face. The Complaint expressly pleads that the ZIP code request was made *after* the cashier swiped the credit card through the processing device, not before -- "After swiping her credit card in the swipe machine, the cashier asked [Hancock] for her

22

ZIP code." (Comp. ¶12; JA 12). Accordingly, as Judge Howell noted, given that Hancock pled that "the transaction had already occurred when the request was made," (Mem. Op. at 8; JA 168) the Complaint failed on this basis as well.

### 4. Hancock's contention that because the CII Act is a "remedial" statute it should be interpreted broadly and liberally cannot justify changing the plain text of the Act

Seeking to have this Court ignore the irreparable deficiencies in her claim identified above, Hancock *repeatedly* states that the CII Act is a "remedial" statute that should be interpreted "liberally and broadly." (*See* Hancock. Br. at 7, 11, 12, 16 n.3, 17, 27, 28, 29, 29 n.16, 31, 32, 34, 35 n.19, 40, 41). But, as this Court has previously acknowledged, "[t]he fact that legislation has a remedial purpose . . . does *not* give the judiciary license, in interpreting a provision, to *disregard entirely the plain meaning of the words used by Congress*." *Symons*, 670 F.2d at 241 (emphasis added). Moreover, giving Hancock the widest latitude permissible, consistent with law, Judge Howell observed that "*[e]ven under the most liberal reading of the term 'address'* . . . , a [ZIP code] . . . is a component of an address, not a full address." (Mem. Op. at 7, fn. 6; JA 167) (emphasis added).

Finally, Hancock contends that the District Court's reading of the CII Act would render it "meaningless," because, according to Hancock, Urban Outfitters is able to determine customers' "complete home or business address" from a ZIP code. (Hancock Br. at 34.) However, the CII Act does not prohibit a retailer from

23

obtaining a customer's address in all circumstances, it is a statute of limited focus,
with clear language, that identifies certain conduct (broken down into five
elements by the District Court) in which a retailer may not engage. Indeed, as
Judge Howell expressly observed, "[o]btaining a consumer's address by other
means is not prohibited by the statute." (Mem. Op. at 7, fn. 6; JA 167).
Accordingly, Hancock's argument on this point proves nothing.

If any further justification for Judge Howell's conclusion was needed – and
Urban Outfitters respectfully suggests it is not – Judge Howell provided it, stating:

> [T]he legislative history of the statute indicates that it
> was the recording of consumer telephone numbers and
> addresses "*on a credit card sales slip*" that provided the
> impetus for this law. Of particular concern to the D.C.
> legislature, as shown by testimony before the D.C.
> committee considering the bill, was the *practice of
> merchants in 1991 of writing consumer identification
> information "directly on [a] check*" provided to purchase
> an item.

(Mem. Op. at 9; JA 169) (referencing Legislative history contained at JA 123-131)
(emphasis added). Thus, Judge Howell correctly noted that "[i]t is [] irrelevant if .
. . a company may be able to learn an individual's address through the use of a
commercially available database if the company has a person's ZIP code . . .
[because] [o]btaining a consumer's address by other means is not prohibited by the
statute." (Mem. Op. at 7, fn. 6; JA 167) (citing D.C. Code. § 47-3153(a))
(emphasis added).

24

5.  **Hancock's dissatisfaction with the scope of the CII Act as compared to the more broadly written statutes of other states is for the Legislature, not this Court**

Because the correctness of District Court's ruling is simply undeniable, Hancock's true gripe really appears to be with the language of the CII Act *itself*, and not with Judge Howell's *interpretation* of the statute as written. However, such dissatisfaction is a concern reserved for the legislature, not this Court. *See, e.g. Community-Service Broadcasting of Mid-America, Inc. v. FCC*, 593 F.2d 1102, 1132-1133 (D.C. Cir. 1978) ("[I]t is . . . an invasion of the legislature's province to undertake to rewrite a law in accordance with one's view of a proper objective in the field."); *see also James Parreco & Son v. District of Columbia Rental Housing Com.*, 567 A.2d 43, 44 (D.C. 1989) ("[The Court is not] authorized to read into an unambiguous statute language that is not there, or to rewrite legislation to make it more 'equitable' or 'fair;'" "[i]n the absence of ambiguity in the statute, correction of any problem that may be presented is the province of the legislature rather than of this court.") (emphasis added).

Thus, Hancock's suggestion that the CII Act be "rewritten" by this Court to conform to rulings by courts in other states faced with *materially* different statutes is clearly misguided. When Hancock made the same arguments in opposition to Urban Outfitters's motion to dismiss, Judge Howell wisely declined to entertain them, eschewing any reliance upon *Pineda v. Williams-Sonoma Stores, Inc.*, 246

25

P.3d 612 (Cal. 2011), and *Tyler v. Michaels Stores, Inc.*, 984 N.E.2d 737 (Mass. 2013). (Mem. Op. at 10; JA 170). As Judge Howell correctly observed, "the statutes in question [in those cases] prohibited the collection of a substantially broader set of consumer information" than does the CII Act, and, accordingly, those cases only "serve to illustrate the restricted nature of the CII Act as compared to similar statutes in other states." (*Id.*; JA 170). For this reason, *those* cases, and the statutes upon which they were based, offer nothing for this Court to consider; any consideration about altering the plain text of the CII Act is a request that Hancock should make to the D.C. legislature.

In sum, for all of the *independently sufficient* reasons explained above, Hancock's CII Act claim unquestionably fails as a matter of law, and the District Court's ruling should be affirmed.

**B.    The District Court also properly dismissed Hancock's DCCPPA claim because Hancock did not plead any "misleading" conduct by Urban Outfitters**

Like her treatment of the CII Act claim, Judge Howell's analysis of Hancock's DCCPPA claim was equally correct. Hancock alleged in her Complaint that Urban Outfitters's request for a ZIP code was a violation of the DCCPPA because Urban Outfitters was "misleading" her by failing to state (1) "that [Urban Outfitters] *is prohibited from requesting* [ZIP codes in the manner alleged]" and, (2) "that the provision of a ZIP code *is optional* [and] *not necessary to complete*

*the transaction*." (Comp. ¶¶ 62-64; JA 18-19) (emphasis added). Neither contention suffices to state a claim against Urban Outfitters under the DCCPPA.

### 1.    Urban Outfitters made no affirmative misrepresentation

As Judge Howell correctly observed, "even under the most liberal interpretation of [Hancock's] Complaint," she "failed to allege [an] affirmative misrepresentation . . . since the request for a ZIP code is not impermissible under the CII Act. . . ." (Mem. Op. at 11; JA 171). The correctness of this observation cannot be seriously disputed; as such, Hancock's claim under 28-3904(e) clearly fails.

### 2.    Failing to state that a request for a ZIP code is optional is also not actionable

Hancock's reliance on subsection (f) of the DCCPPA is equally misplaced, because Urban Outfitter's failure to expressly inform Hancock that providing her ZIP code was optional cannot be viewed as a *material* omission.    In her brief, Hancock mechanically recites the elements of a subsection (f) violation by claiming that she alleged "that [the] misrepresented fact was material" and that it "had a tendency to mislead," (Hancock. Br. at 43), but there are no factual allegations in the Complaint that support those legal conclusions.    In similar circumstances, the courts of this District have not hesitated to find that such pleading is insufficient to state a claim under the DCCPPA, and right so. *See, e.g. Carter v. Bank of America, N.A.,* 888 F. Supp. 2d 127 (D.D.C. 2012) (dismissing

27

DCCPPA claim where the plaintiff had not "pled any facts beyond the bare allegation that [the defendant] misled [the plaintiff]").

Critically, Hancock never alleges that she provided her ZIP code under the impression that she was *required* to do so, or even that she thought she *might*, in the circumstances, have been required to do so. (Comp. ¶¶ 23-41; JA 12-14). Moreover, Hancock also failed to allege that she would have acted differently (i.e. refused Urban Outfitters' request) had she been told that she could do so. (*Id.*). Finally, Judge Howell rejected Hancock's request for a favorable "inference" based on the temporal proximity of the request because: (1) the basis of that inference was not pled in the Complaint; and (2) Hancock pled that the ZIP code requests were made *after* the cashier swiped her credit card, supporting an inference that "the transaction had already occurred when the request was made." (Mem. Op. at 8; JA 168).

For all of these reasons, Hancock's omission theory of DCCPPA liability, based on a failure by Urban Outfitters to expressly state to her that the request for a ZIP code was voluntary, clearly fails. *See, e.g., Jackson v. Asa Holdings, LLC*, 751 F. Supp. 2d 91, 99 (D.D.C. 2010) (dismissing the plaintiff's DCCPPA claim where the plaintiff "[did] not explain in her Complaint what acts, if any, she would or would not have taken if she had been aware of [the defendant's intentions]").

28

### 3. Hancock's effort to modify the subject matter of Urban Outfitters's alleged misrepresentation is meritless

In a last-ditch effort to try to salvage her claim under the DCCPPA, Hancock argues that, "even if it is legal under the [CII Act] to request ZIP codes during credit-card transactions, Hancock can still prove it is illegal under the DCCPPA to deceptively request a ZIP code without telling the consumer the true purpose of the request: *to secretly obtain her complete address*." (Hancock. Br. at 40) (emphasis added). However, that issue is not properly before this Court.

Importantly, Hancock did *not* plead in her Complaint that silence by Urban Outfitter about the possible use of her ZIP code was a basis for her DCCPPA claim. (*See* Comp. ¶¶ 62-64; JA 18-20). Rather, as discussed above, her allegations focused on alleged misconduct stemming from a failure to apprise her that a request for a ZIP Code is "illegal" under the CII Act (which, as previously demonstrated, is plain wrong) and that a failure to disclose that the request was voluntary was a material omission (also demonstrated to be incorrect above). (*See* Comp. ¶¶ 62-64; JA 18-20). Nor did Hancock raise this argument before the District Court. Accordingly, under well-settled principles of appellate practice, this Court should decline to address this issue on appeal. *See Adams*, 531 F.3d at 945 (holding that a party forfeits for appeal arguments not raised before the District Court); *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir.

1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.").

In sum, Hancock has not presented this Court with any argument in support of her DCCPPA claim that warrants further consideration, and the District Court's dismissal of this claim should be affirmed as well.

## II.   THE DISTRICT COURT PROPERLY DISMISSED HANCOCK'S COMPLAINT WITH PREJUDICE

Hancock also argues that Judge Howell's decision to dismiss her claims *with prejudice* was reversible error. (Hancock Br. at 43-45). This Court reviews that decision under an abuse of discretion standard. *Firestone*, 76 F.3d at 1208. Under this (or any) standard, Judge Howell's decision was unquestionably correct.

### A. Numerous incurable deficiencies existed in Hancock's Complaint

In choosing to dismiss the Complaint with prejudice, Judge Howell correctly reasoned that, "any amendment of [Hancock's] Complaint would be *futile,*" since the claims were "based on an *erroneous interpretation* of the CII Act that *cannot be cured by additional factual allegations*." (Mem. Op. at 12; JA 172). Of course, among the most obvious, unfixable, problems with the Complaint is the fact that a ZIP code is not, and cannot be changed to, an address; no manner of amendment could cure this defect.

30

Moreover, Hancock does not suggest to this Court how she *could* satisfactorily cure this problem; only that this Court should ignore the language of the statute and/or read language into the statute that does not exist. (Hancock Br. at 43-44). And, because, as demonstrated above, the irreparable problems in the CII Act infect the DCCPPA claim as well, that claim is similarly not capable of repair by amendment. *Whiting v. AARP*, 637 F.3d 355, 365 (D.C. Cir. 2011) ("The problem with Whiting's case is not improper pleading; it is that her claims are legally defective;" affirming dismissal with prejudice).

### B. Hancock never properly sought leave to amend in the lower court

Hancock's challenge to the dismissal with prejudice should also be rejected because Hancock never properly requested leave to amend from the District Court. *See Whiting*, 637 F.3d at 365 ("There is no merit to Whiting's contention that the District Court should have afforded her leave to amend her complaint, based on the footnote in her opposition to the Rule 12 (b)(6) motion. . . .That footnote did not satisfy the requirement that a motion to amend provide some "indication of the particular grounds on which amendment is sought").

While Hancock mentioned in her Opposition brief, in passing, that she would like leave to amend *if* the Court imposed a rule 9(b) standard to its DCCPPA claim, (JA 50), she made no other request, clear or oblique, that she be provided an opportunity to amend, nor did she ever suggest how the Complaint could be

31

repaired if amendment was granted. In such circumstances, dismissal with prejudice is the proper result. *See Kowal*, 16 F.3d at 1280 (Due to the plaintiffs' failure to move to amend her Complaint, the court held that "it could hardly have been an abuse of discretion for the District Court not to have afforded [the plaintiffs] such leave *sua sponte*.") (internal quotation omitted) Finally, and most telling, even before this Court, Hancock nowhere indicates how the Complaint could be modified to state a claim; dismissal with prejudice was completely justified, and Judge Howell's decision should be affirmed.

## III.  JUDGE HOWELL CORRECTLY HANDLED THE SUBJECT MATTER JURISDICTION ISSUE

In a July 30 Order, a Motions Panel of this Court *sua sponte* requested that the parties address in their merits brief whether Hancock possesses Article III standing to assert her claims in this Court. Hancock has addressed this issue, maintaining that the District Court had, and now this Court has, Article III standing based upon her contention that Urban Outfitters violated her statutory rights, citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975). (Hancock Br. At 20-25).

Urban Outfitters does not dispute this Court's subject matter jurisdiction to hear this matter. Urban Outfitters believes that Judge Howell's handling of the issue was correct – the Court assumed that jurisdiction would exist if Hancock's allegations state a claim for a statutory violation, in accordance with *Bell v. Hood*, 327 U.S. 678 (1946), and proceeded to consider, and rule upon, the claims on the

32

merits. *Id.* at 682-83 ("If [a] court . . . exercises its jurisdiction to determine that the allegations in the Complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction."); *See also Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010) ("The presumption . . . is that the dismissal of even a very weak case should be on the merits, rather than because it was too weak even to engage federal jurisdiction."). Judge Howell's handling of the issue, just like her handling of all of the earlier discussed issues, was completely correct.

## IV.    HANCOCK'S REQUEST FOR CERTIFICATION SHOULD BE DENIED

Finally, Hancock also argues that while this Court has subject matter jurisdiction to hear and decide this matter, it should instead "stop short of deciding the question" and certify the case to the D.C. Court of Appeals. Hancock's request should be summarily denied. As this Court has repeatedly held, with very limited exceptions, this Court should *not* "stop short of deciding [a] question" that it is fully capable of disposing. *See Dial A Car, Inc. v. Transp., Inc.,* 132 F.3d 743, 746 (D.C. Cir. 1998).

On issues of certification, this Court has articulated a set of well-defined parameters governing its actions in this regard, first in *Tidler v. Eli Lilly & Co.,* 851 F.2d 418, 426 (D.C. Cir. 1988) and more recently in *Dial A Car.* As this Court has explained in those cases, certification should only occur where (1) local law is

33

"genuinely uncertain" with respect to a dispositive question," (2) the "case is one of extreme public importance," and (3) there exists no "discernible path for the court to follow," in reaching a just result in the matter. *Dial A Car*, 132 F.3d at 746 (citations omitted). As Urban Outfitters previously demonstrated to the Motions Panel, Hancock's request does *not* satisfy these requirements.

A. D.C. statutory interpretation case law is not genuinely uncertain

As explained above, the District Court's opinion is based upon well-settled principles of statutory interpretation, and not any unique attributes of the CII Act. Judge Howell read the plain language of the Act, which requires a request for an *address or telephone number* for potential liability to attach, and correctly found that Hancock's allegations fell outside the scope of the statute. Accordingly, Hancock's protestation that no reported decision has interpreted the CII Act is of no consequence. In short, there is no uncertainty whatsoever regarding how the D.C. courts interpret statutes – the principles to be applied mirror those of this Court. *Compare Crawford v. District of Columbia*, 891 A.2d 216, 219 (D.C. 2006) ("When interpreting a statute, we first look to its plain language.") and *Stevens v. Arco Mgmt. of Wash. D.C., Inc.*, 751 A.2d 995, 998 (D.C. 2000) ("As a general rule, we look first to the plain language of a statute to determine its meaning."). Thus, Hancock does *not* present any basis for contending that the applicable law in

34

the District is "genuinely uncertain" and Hancock fails this part of the test for certification.

**B.    The case does *not* present a matter of extreme public importance**

Hancock's request also fails the second prong of this Court's test, as it does not present a matter of extreme public importance. Seeking to create such an issue, Hancock attempts to twist this case into something it is not – a referendum on "[a] consumer's control over who may request and collect her personal identification information, and how such information may be used." (Hancock Br. at 28). However, as noted above, this case does not offer any opportunity for such consideration; as Judge Howell recognized, it presents only a rather simple case of statutory construction. And, as to Hancock's dissatisfaction with the language of the CII Act *itself*, that is an issue best suited for the legislature to address, not the courts. *See, e.g. Community-Service Broadcasting*, 593 F.2d at 1132-1133; *Parreco & Son*, 567 A.2d at 44.

**C.    A discernible path exists for the D.C. Circuit to follow**

Finally, even *if* this Court were to find any possible support for certification in the first two prongs of this Court's test, the final prong confirms that certification is *unnecessary* and *improper* in this case. In short, a "discernible path" clearly existed for the District Court to resolve this case, which Judge Howell followed, and this Court should affirm Judge Howell's ruling on that basis.

35

This Court's decision in *Dial A Car* is highly instructive on this point. There, this Court properly rejected an appellant's request for certification, notwithstanding silence in the D.C. Code on the issue on which appellant sought certification, because the issue could otherwise be resolved based upon well-settled legal principles (e.g., a "discernible path"). *Dial A Car*, 132 F.3d at 744. Here, the same course should be followed. Hancock's failure to satisfy the pleading requirements of her proposed claims is both irrefutable and irreparable, and thus further consideration of them, by either the D.C. Court of Appeals or this Court, is not required. Affirmance of Judge Howell's ruling, finally putting this matter to rest, is the only just result.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the District Court.

Respectfully submitted,

/s/ James M. Burns
James M. Burns (Bar No. 412319)
DICKINSON WRIGHT, PLLC
1875 Eye St. N.W. – Suite 1200
Washington, D.C. 20006
202-457-0160
*Counsel for Urban Outfitters, Inc. and Anthropologie, Inc*

Dated: October 16, 2014

36

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the Brief contains 8,447 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the Brief has been has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

/s/ James M. Burns

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing, along

with the Proposed Order, were served upon counsel of record via CM/ECF on

October 16, 2014.

/s/ James M. Burns